Morning. May it please the court, James Thompson on behalf of Mr. Legoretta. In this case, there was a nine-year delay between the time that the indictment was filed and Mr. Legoretta was arrested. There was no knowledge by Mr. Legoretta of the indictment itself until the time that he was arrested in 2015. Mr. Legoretta did not avoid prosecution on an indictment. The government was not diligent in pursuing the prosecution of Mr. Legoretta. And finally, because of the length of the delay, prejudice is presumed. Can that presumption be overcome? As I read this record, the district judge didn't get there because he found the delay was partially your client's fault and the government had been diligent. But if you were to prevail here, shouldn't we send it back to the district judge to see whether the presumption of prejudice could be overcome? I don't think the court needs to because it's de novo review. So the court could make the determination. Did the district judge make a determination as to whether the presumption of prejudice had been overcome? No, because he never got to it. Right. So let's assume we were to agree with you that on this record the government hadn't demonstrated that it was your client's fault or sufficient diligence. Wouldn't the appropriate remedy be to send it back to the district judge to determine whether or not the government could overcome the presumption of prejudice? I would prefer that the court... I know, I know. You'd prefer that we dismiss the indictment. But I'm asking in terms of, that's a factual, that would be a determination based on some showing that we don't have a new record in front of us, right? That is correct. And I'm not here to argue with the court, I'm trying to persuade the court. So, but I understand what the court is saying and I can understand that a remand order in those circumstances, if the court has not ruled on prejudice, would be legitimate. Except for the fact, I think, in speedy trial cases in which because of the length of delay, which the court knew about, and the court made a determination that that delay was significant and for the entire nine-year period, then I think this court could determine that the prejudice has been established without there having to be a ruling by the district court. Let me ask you one other question about the district judge's holdings in this case. You said we reviewed de novo, but the district judge made a number of factual determinations, that the government had acted with diligence, that the measures it undertook were reasonable. Don't we review those for abuse of discretion? Or for clear error? As for the speed trial issue, that's reviewed de novo, and so I think... But don't we review the factual findings that the judge made in a normal deferential fashion? In the context of the individual factual assertions that are made by the party, I guess the court would do that, but because the overall standard is de novo, I'm not sure that the court needs to do that. I'm sure the court can decide on its own on the record that it has. But what the judge found, I think as a matter of fact, that put aside for a second whether your client knew he was being prosecuted. That's the issue you focused on in your briefs. But as to the other issues, other components of the speedy trial analysis, the judge found that the measures that the government undertook, various efforts over this time period, were reasonable diligence. Don't we have to defer to that finding? I don't believe so, because the court's going to review de novo, so the court can look at all those facts separately and make its own determination. So, for example... See, I thought when we reviewed de novo here, we took the facts reasonably found and determined whether or not they add up to a violation of the speedy trial rule. I'm certainly going to defer to the court. I'm just thinking out loud here. But I thought that when it's de novo review under these circumstances, then the court can review the facts and make its own determination. So, for example, there is this issue about whether or not on August 17th, when the agents went to the house for the purposes of the search, there is a finding by the court that they were there to arrest him. And the government, in its brief at page 2, talks about the fact that they were there to arrest him on that date. But that's not what the record shows. Agent Breseno's declaration talks only about the search warrant. He incorporates his police report that he prepared at the time. That only talks about a search warrant. It does not mention arrest at all. And then when he's called to testify on July 20th, 2015, he does not mention anything about being there for the purposes of arresting Mr. Legareta. So I think that this court can make its own determination. Well, what you're saying is that certain findings aren't supported by the record, as opposed to we can... So let's go back to what I think is a centerpiece of your argument. If, in fact, we find that the judge appropriately admitted the hearsay testimony here, and I think nobody doubts that it's hearsay, that your client said, I'm not coming because the narcos are there, or words to that effect, do you lose? No. Even if that comes in, you think? Because the cases, I think, draw a very fine distinction between that which is the circumstances regarding arrest and that which is the circumstances regarding notice of the indictment. Under your view, your client has to know that he's under indictment? Yes. So let's just assume these facts for a second. His sister calls him and says, I want you to come over to the house. And he says, I'm not coming there because the cops are there. And then he goes to Mexico for nine years. Aren't those two facts together enough to allow a judge to draw an inference that he knew he was being sought to be prosecuted? No, not given the fact that there had been the earlier arrest, incarceration, and release of Mr. Allegaro. He was originally arrested crossing the border. They filed a complaint against him. He was incarcerated. He went before the court. The magistrate court dismissed the complaint against him. He was released from federal custody. He was then transported to state court on pending state charges. He was exonerated of those state charges. And then he was then taken to immigration to two or three different locations and then ultimately released. So at that point in time, what he knew was there were no charges pending against him. There had not been an indictment. But he knew if we find this evidence was appropriately admitted, he knew there were narcos at the house looking for him. But he doesn't have to get involved in his sister's business. He doesn't know that the narcos are there for him. Why would he want to get back in that situation in which he was earlier arrested and then going to be incarcerated and then going to be put through deportation proceedings and be incarcerated on an immigration hold for a period of time, only to be released again? She didn't tell him because Agent Berseno didn't tell her. The police are here. They have an arrest warrant for you. They've issued an indictment two days beforehand. They want to talk to you and arrest you. At that point in time, he would then, if he fled to Mexico, be avoiding prosecution. But that's not what happened here. She never told him those material items. In the cases, I think it's Brown and Heschelman, talk about that difference between knowing about arrest. The one individual, I can't remember the exact facts of the case, but the one individual is being watched at his house. He leaves his house, gets into a car, and makes a getaway drive away from the FBI agent. What difference does it make whether Contreras tells him the narcos are here or the neighbors tell him the narcos are here? I don't think it makes any difference. I don't think so either. Whatever it is. But someone needed to tell him that there was an indictment, and that wasn't the case. And when they went to that house on August 17th, an arrest warrant had not been issued. It wasn't issued until September 27th, over a month later. So the only purpose that they were there is to search his sister's house. By the way, they search, and they find absolutely no contraband. So he wouldn't be alerted to the fact that he was in trouble because they went into the house, they searched the house, and they found a pound of pure methamphetamine or whatever else. There was no fruits of that search that would have alerted him to the fact that he was even in any way subject to prosecution, subject to arrest, subject to even detainment. So given the fact that he had earlier been through these proceedings and had been released, and he was then told that the narcos are here by the neighbor or by his sister indirectly or whatever it was, it's an honor not. There has to be him being told that there was an indictment. And then there has to be, you know, the second part of this is the government's diligence in pursuing that. And the government did not diligently pursue that. Yeah, and that's why I asked you before the judge made some findings that he thought what they had done amounted to reasonable diligence. And your argument is that we review those de novo. Right. We've taken you over your time. Thank you very much. May I save whatever I have left, if anything, for rebuttal? No, you're on the debtor's side. Thank you very much. Good morning, Your Honors. I am Christopher Brunwyn for the United States. I want to go right to something defense appellants counsel said repeatedly in his argument, and that is that the government was required to notify the defendant that he had been indicted. The cases don't say that. The actual holding that the cases of the government has cited and the actual holding in the language from Mendoza is, quote, that the government has, again, a sub-quote, some obligation to pursue a defendant and bring him to justice. If the government fulfills that obligation by pursuing a defendant with reasonable diligence, the defendant does not have a Speedy Trial Act claim. But don't our cases suggest that one of the, I think it's four factors, that we consider is whether the defendant absented himself knowing that he was being pursued? Of course, Your Honor. And that is, in effect, the second line of inquiry, that if the courts in assessing this issue of the Speedy Trial Act evaluation, Aguirre, Corona-Vibara, and Sandoval talk about, has the government met its obligation to pursue with reasonable diligence? And the conclusion that is, if the government has, there is no Speedy Trial Act claim. And then second, if the defendant has affirmatively fled, absented himself, attempted to avoid prosecution, then again, second tier, he doesn't have a Speedy Trial Act claim. So let me understand your position. Let's assume that a defendant has no reason to believe he's being pursued by the government. I mean, other than the fact that he may have committed a crime, which remains for you to prove. Just leaves the country. And you're reasonably diligent in trying to locate him, but you can't. But he's not fled with any guilty knowledge, if you will. Is it your position that under that circumstance, the presumption is not triggered? Presumption is different, but it is the answer to the court's question is yes, if the court, and I'm just reading from the holding that the Ninth Circuit has repeatedly made in Mendoza, Aguirre, Sandoval, that if the government has met its obligation by pursuing a defendant with reasonable diligence, he does not have a Speedy Trial Act claim. So let me ask you a more precise question. Then in your mind, it makes no difference whether or not the defendant in this case knew the narcos were at his sister's house. It doesn't make a difference because the court could find on that basis that the government, having pursued him with reasonable diligence, has met its obligation. Did the court, did the district court find that? So you think the district court found that wholly apart from his knowledge, there was no speedy trial violation? Yes, Your Honor, because the court specifically found, and I'll read the court's ruling, the district court found that agents, quote, went to his home where he had been one day earlier when they discovered he was not there. They instructed his sister to call him and ask him to return. This is significantly more effort than the government made in Mendoza, and that's in the court's order. So wholly apart from what he may have said to his sister when she talked to him? Correct. You think that you've demonstrated enough here? Yes, Your Honor, and then the court went further to recite that the government's efforts to arrest the defendant after that date, after August 7th. Right, and I wanted to put those aside for a second. I just wanted to focus on whether or not his knowledge of being sought was integral to your case. It wasn't integral. The court could decide, as it did, on that basis. The court could also decide based upon the fact that the government pursued him with reasonable diligence. One could certainly foresee a certain… Is that reviewable de novo? The determination under the Speedy Trial Act is reviewed de novo. The factual basis are reviewed under the deferential standard of clear error. So finding that there was reasonable diligence in pursuing is reviewable? Under the deferential standard. And as I was stating, that the court, in addressing additionally the government's diligence, noted that, found that the evidence demonstrates that it acted diligently in attempting to apprehend the defendant while he was abroad. Their efforts exceeded those of the agents in Mendoza, and the court also said, and the Ninth Circuit has found reasonable diligence where less was done. And that's in the court order at page 20. I believe it's in the record at page 27. The court specifically cited to Corona Vergara, noting that in that case, what the government agents had done is they had entered the defendant's information into the NCIC system, into the same system used, I believe was used here, and border computer system. In the Aguirre case, where the Ninth Circuit also found that the government had met its obligation to pursue the defendant with diligence, the agents actually learned that the defendant was in England and they entered his information in databases, law enforcement databases. But just a second, counsel. You say that independent of whether Legorreta was trying to escape to Mexico, if due diligence was found by the district court, that would be an independent basis to affirm, correct? I believe that that's... But that's not exactly what the district court said at page 27, which you just mentioned. It says, in short, quote, the reason for the delay in this case rests squarely on the shoulders of defendant. So that reading that, it seems like the district court was saying that the escape to Mexico was the reason why the long delay occurred. Your Honor, I'm saying that the court found both factual... Yeah, well, that's the question I was asking. Did it find them independently? It seems to me the court said the reason that I find the government that there was no delay here was because this guy fled to Mexico, knowing he was being chased, and the government thereafter did all the reasonable things. And I think that that is consistent with the cases that assess... Well, you cite Mendoza, and one of the difficulties, and there's an old litigation rule about never citing a case in which your side loses. Mendoza... And I would have followed that, but it's right there. Yeah, but Mendoza says one of the reasons that we don't find reasonable diligence is nobody told Mendoza he was under indictment. That was one of the factual considerations, but it wasn't what the court said was actually the legal requirement for diligence. And you certainly... It would make no sense that the law holds that you have to tell a defendant he's been indicted. Well, and I tend to agree with you about indictment, but surely the cases do suggest that you ought to know, we ought to demonstrate that he's leaving the country was for purposes of evading prosecution. And the courts in addressing that have said both things, have said, as the court did here, that if the government pursues him with reasonable diligence, the government has met its obligation. Apart from that, if the defendant has fled and he himself has caused the delay, he can't thereafter bring a Speedy Trial Act claim. So, yes, the court discussed and, I believe, made findings on both issues and both points and both arguments. I think either one of them is fatal to the defendant. Your time's running out, and I'm interested in hearing from the government about why this, put aside the Confrontation Clause issue, why this hearsay was admissible at the hearing. Well, you have, you have, you can look at it a number of ways. The present sense, the court analyzed the statements from the sister to the agent under a present sense impression analysis, exception to the rule against hearsay. I think the court's analysis is correct on that. The findings that the court made are correct on that. Even apart from that, the defendant's statements to the agent, that the agent said she heard him say narcos, that's a separate analysis, and that would come in as an admission of a party opponent. Well, but it doesn't come in if it's double hearsay. In other words, you've still got to get her statement in, right? The agent specifically testified that she heard. Right, but her statement is hearsay. The agent's statement is hearsay. The agent's statement is hearsay. The agent's statement, the agent testified in the agent's statement of what she heard the defendant say over the phone is not hearsay. Really? That is, the agent testified that the defendant. He's testifying about her conversation with her brother. I'm understanding. Sure. The agent is testifying. I understand that his statement is a statement of a party and therefore admissible. The question is how do you prove his statement? You're proving his statement. If his sister had come in and said he said that, no problem. You're attempting to prove his statement by bringing in an agent who said his sister said he said that. Correct, Your Honor. And that's classic hearsay, isn't it? I'm sorry, Your Honor. I misunderstood you because there were different levels at which the statement was heard. But that's classic hearsay. You need an exception to get it in. Correct. And the court found an exception under the present sentence. I understand your point. But as to the word narcos, the agent testified that she herself heard that directly. She said she was in close proximity to the phone and she herself could hear that. She being the agent or the contrarian? Agent. Okay. So can you tell me where in the record that is? I'm sorry. Is that in the district court's findings? Yes, Your Honor. I'll find it then. I'm sorry. I didn't see it in the district court's findings. I can point you to the at the excerpt. Because then it's a party admission. Correct, Your Honor. And you don't need a hearsay exception. At the excerpts of record 304 to 305, that's in the reporter's transcript at 23 to 24, the agent testified that she heard. Right. No, I know that. My question is did the district court find that she heard it? I believe that is in the court's order. Okay. I'll look for it. You don't have to. Your time is up. But what about Judge Hurwitz's point that it's not a neorebuttable presumption? Should it be remanded? Well, Your Honor, the findings in this case, and I apologize if I jumped in before you had finished with your question. No, no, no. But assume we don't agree with you. Should it be remanded? No, because the presumption, the court specifically found that the defendant had done nothing to show prejudice in this case. Yeah, but there is a presumption of prejudice. There would be a presumption if the government was at fault for the delay, and I don't believe that is the case here. But assume that we find that the government was at fault. Is the presumption irrebuttable? I would expect it would be rebuttable, but there was no, and I don't want to repeat myself, but there was, the court repeatedly found that the defendant had made no effort to show prejudice in this case. Okay. Thank you very much. Thank you. All right. The case of the United States v. Chavez de Orreta will be submitted. Thank you very much. Thank you.
judges: Bea, Hurwitz, Motz